### JOHN BRYMER III *v.* TOWN OF CLINTON ET AL.
### (SC 18202)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Submitted on briefs March 16—officially released November 22, 2011

*Andrew J. Morrissey* filed a brief for the appellant (plaintiff).

*Henry J. Zaccardi* and *Sheila A. Huddleston* filed a brief for the appellees (defendants).

*Opinion*

PALMER, J. The plaintiff, John Brymer III, appeals[1] from the decision of the compensation review board (board), which affirmed the decision of the workers' compensation commissioner for the third district (commissioner) dismissing the plaintiff's claim for hypertension benefits under General Statutes § 7-433c (a)[2] as

---

[1] The plaintiff appealed to the Appellate Court from the decision of the compensation review board, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 7-433c (a) provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner

untimely under the one year limitation period of General Statutes § 31-294c (a).[3] In particular, the plaintiff claims that the board improperly upheld the commissioner's determination that the plaintiff had notice of his hypertension more than one year before he filed his claim for benefits under § 7-433c. While the plaintiff's appeal was pending, this court issued its decision in *Ciarlelli* v. *Hamden,* 299 Conn. 265, 300, 8 A.3d 1093 (2010), in which we held that the one year limitation period set forth in § 31-294c (a) for claims brought pursuant to § 7-433c does not commence until an employee is informed by a medical professional that he or she has been diagnosed with hypertension. Subsequent to our decision in *Ciarlelli,* we directed the plaintiff and the named defendant, the town of Clinton,[4] to submit supplemental briefs addressing whether the board's decision should be reversed in light of our holding in *Ciarlelli.*[5] The parties agreed to waive oral argument

as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. . . ."

[3] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . ."

[4] Connecticut Interlocal Risk Management Agency, the heart and hypertension claims administrator for the town of Clinton, also is a defendant. In the interest of simplicity, we refer to the town of Clinton as the defendant throughout this opinion.

[5] Specifically, we asked the parties to address the following question: "In light of *Ciarlelli* . . . should the decision of the board affirming the dismissal of the [plaintiff's] claim as untimely be summarily reversed and the matter remanded with direction to reverse the decision of the commissioner and to remand the case to the commissioner for further proceedings according to law?"

and to have this appeal decided on the basis of the record and briefs. We conclude that the board improperly upheld the decision of the commissioner. Accordingly, we reverse the decision of the board.

The following undisputed facts and procedural history are relevant to our decision. The plaintiff was hired in 1987 by the defendant as a police officer after he successfully passed a preemployment physical examination that revealed no evidence of hypertension or heart disease. The preemployment examination was performed by Bernard Sheehan, who was the plaintiff's primary care physician from 1987 to 2000. The plaintiff's medical records reveal that Sheehan examined the plaintiff eight times between February, 1995, and June, 2000, and recorded normal blood pressure readings on each occasion.[6] On June 8, 2000, Sheehan diagnosed the plaintiff with diabetes and referred him to Kort C. Knudson, an endocrinologist, for evaluation and treatment.

The plaintiff was examined by Knudson on June 20, 2000. At that time, the plaintiff recorded an elevated blood pressure reading of 140/100. Knudson informed the plaintiff that blood pressure readings for diabetic patients should be under 130/85 and advised the plaintiff to keep an eye on his blood pressure. Knudson subsequently prepared a medical report for Sheehan detailing the results of his examination of the plaintiff. The report provides in relevant part: "IMPRESSION: [The plaintiff] has diabetes which is probably [t]ype II. The glucose is not well controlled with low dose Glyburide. He also has elevated cholesterol and hypertension. He says his blood pressure is usually well into the normal range. . . . RECOMMENDATIONS: 1) [The plaintiff] was

_____

[6] The plaintiff recorded the following blood pressure readings: 120/80 and 124/82 on February 9, 1995; 126/70 on October 15, 1996; 120/80 on August 26, 1997; 124/84 on December 29, 1998; 120/80 on January 26, 1999; 130/80 on January 29, 1999; 118/72 on March 2, 1999; and 136/80 on June 8, 2000.

given a new Glucometer Elite glucose monitoring instrument. 2) He will see [a] dietician . . . . 3) He will start Lipitor [ten milligrams] daily. 4) He will stop the Glyburide. 5) The patient will start Glucophage 500 [milligrams, two times per day] . . . . 6) He will also start Avandia [eight milligrams] daily. It may be a month before he sees [any] response to the Avandia. . . . [7)] He will watch his blood pressure. If it remains above 130/85 we will start medication." At a follow-up visit with Knudson one month later, on July 21, 2000, the plaintiff recorded a blood pressure reading of 110/90, which Knudson considered to be a normal systolic pressure and slightly elevated diastolic pressure.[7]

In 2001, the plaintiff began seeing Edward Winokur as his primary care physician and for the treatment of his diabetes. The plaintiff's medical records reflect that he was examined by Winokur five times between 2001 and 2003. On May 30, 2001, during his first visit with Winokur, the plaintiff recorded a normal blood pressure reading of 122/80. On August 29, 2001, he recorded a normal reading of 120/82. On October 11, 2001, he recorded a normal reading of 120/80. On February 2, 2002, he recorded a normal reading of 130/60. On July 11, 2003, Winokur diagnosed the plaintiff with hypertension after the plaintiff presented with chest pain. At that time, Winokur prescribed antihypertensive medication for the plaintiff and found that he was medically unable to return to work until September 15, 2003.[8] On August 29, 2003, the plaintiff filed a notice of claim for hyperten-

[7] Knudson apparently did not believe that the slightly elevated diastolic pressure on July 21, 2000, constituted a problem because there is nothing in the record to indicate that he prescribed antihypertensive medication to the plaintiff.

[8] The record does not indicate whether the plaintiff also had elevated blood pressure readings in addition to chest pain and, if so, when. There is no dispute, however, that Winokur diagnosed the plaintiff with hypertension on July 11, 2003, and that Winokur informed the plaintiff of that diagnosis.

sion benefits under § 7-433c, which the defendant subsequently moved to dismiss on the ground that the claim was untimely under § 31-294c (a).

A hearing on the plaintiff's claim was held at which the deposition testimony of Knudson was entered into evidence. In his direct testimony, Knudson stated that he had diagnosed the plaintiff with hypertension on June 20, 2000, and had discussed the diagnosis with the plaintiff at that time. On cross-examination, however, Knudson was asked to review the plaintiff's medical records from 1995 through 2002, which reflected that the plaintiff had recorded normal blood pressure readings during twelve of thirteen visits to his physician, with the only exception being his June 20, 2000 consultation with Knudson. Upon review of the plaintiff's medical records, Knudson acknowledged that he would not consider the plaintiff to have been hypertensive in 2000 and that his previous statement to the contrary was not "an actual diagnosis of hypertension . . . ." Knudson also conceded that the plaintiff's June 20, 2000 elevated blood pressure reading "[stood] out as an aberration compared to the ones before and after" it, and that the words "hypertension" and "high blood pressure" are often used "interchangeably." (Internal quotation marks omitted.) When Knudson was asked whether, as a general matter, a physician must take a number of blood pressure readings over a period of time in order to determine whether a person is hypertensive, "as opposed to having an occasional high blood pressure reading due to nervousness or other reason[s]," he responded: "We like to have a number of readings. If some[one] has severely high blood pressure, possibly two readings would be adequate, maybe even over a short period of time. If some[one] has lower blood pressure, you might hesitate to label them as having hypertension until you have established a pattern."

The commissioner subsequently dismissed the plaintiff's claim as untimely. In his decision, the commissioner found that, "[o]n June 20, 2000 . . . Knudson diagnosed the [plaintiff] with hypertension and discussed the hypertensive condition with the [plaintiff]." The commissioner also found that "[t]he [plaintiff] had normal blood pressure readings after June 20, 2000, until he was diagnosed with hypertension by . . . Winokur on July 11, 2003, and was started on medication."

Following the commissioner's decision, the plaintiff filed a motion to correct findings and a motion for articulation. In the motion to correct, the plaintiff requested that the commissioner supplement his findings to include the following findings: (1) "Sheehan's records reflect that there were nine . . . blood pressure readings taken between February 9, 1995, and June 8, 2000. All [nine] blood pressure readings were normal"; (2) "Knudson's office notes of June 20, 2000, reflect diabetes and a high blood pressure reading. However, [Knudson] clarified . . . that this one blood pressure reading was an aberration among normal readings over a seven year period"; (3) "[a]fter reviewing all of [the plaintiff's] blood pressure readings both before and after June 20, 2000 . . . Knudson concluded that a diagnosis of hypertension could not be made based on [the June 20, 2000] reading"; and (4) "[a]lthough [Knudson] first stated that he made a diagnosis of hypertension on June 20, 2000, he corrected this by indicating that the terms 'high blood pressure' and 'hypertension' are sometimes used interchangeably but that a diagnosis of hypertension requires multiple blood pressure readings . . . ."

In his motion for articulation, the plaintiff sought an articulation of "the basis on which [the commissioner] conclude[d] that the [plaintiff] was diagnosed with hypertension on June 20, 2000, in light of . . . Knud-

son's clarification . . . during cross-examination that a hypertension diagnosis requires multiple high blood pressure readings." He also sought an articulation of "the evidence [on] which [the commissioner] relied . . . [in] concluding that the [plaintiff] was 'made aware of a hypertension diagnosis' rather than simply being told that he had a high blood pressure reading and that future readings should be monitored."

The commissioner denied the plaintiff's motion to correct but issued the following responses to the plaintiff's motion for articulation: (1) "The finding that the [plaintiff] was diagnosed with hypertension is based [on] . . . Knudson's medical exam[ination] and report of June 20, 2000, which I found was the credible evidence"; (2) "[t]he finding that the [plaintiff] was aware of the diagnosis of hypertension on June 20, 2000, was based on . . . Knudson's physical exam[ination] and report. I also considered the fact that the [plaintiff] was a certified emergency medical technician. I did not find the testimony of the [plaintiff] to be credible when [he] indicat[ed] that he was not made aware of the hypertension diagnosis on June 20, 2000"; and (3) "[t]he opinion that the [plaintiff] was told he had hypertension was based on . . . Knudson's physical examination of the [plaintiff] on June 20, 2000, and [Knudson's] medical report issued on that date."

The plaintiff appealed from the commissioner's decision to the board, which affirmed the commissioner's decision. The board rejected the plaintiff's contention that the commissioner improperly had denied the plaintiff's motion to correct findings to reflect Knudson's deposition testimony that the plaintiff was not actually suffering from hypertension in June, 2000, and that the single elevated blood pressure reading recorded between 1995 and 2002 was an "aberration . . . ." The board stated that, under well established precedent, a person asserting a claim under § 7-433c "is required to

notify his or her employer of a potential claim for benefits by filing a notice of claim when (1) the medical evidence shows that he or she has developed symptoms of hypertension, and (2) he or she knows, or should know, that he or she has symptoms of hypertension that may require lifestyle changes and/or treatment . . . ." (Internal quotation marks omitted.) The board then concluded that the commissioner was not required to treat Knudson's deposition testimony as a retraction of the views that Knudson had expressed in his June 20, 2000 report to Sheehan. The board determined, rather, that "[t]he trier was entitled to determine how much weight to give [Knudson's] testimony and whether to connect the [plaintiff's] signs of high blood pressure in 2000 to his diagnosis of hypertension in 2003." The board further concluded, "[w]hether or not a blood pressure reading constitutes evidence of hypertension is a question of fact, which is determined based on the totality of the evidence. . . . The trier found here that the reading [on June 20, 2000] did indicate hypertension. We must honor that factual determination on review . . . ." (Citation omitted.) This appeal followed.

After the plaintiff filed his brief with this court, we stayed the appeal pending our decision in *Ciarlelli*, which presented a claim similar to the claim that the plaintiff raises in this appeal. Following our decision in *Ciarlelli*, the parties filed supplemental briefs addressing whether our holding in that case requires reversal of the board's decision.

In affirming the commissioner's dismissal of the plaintiff's claim, the board relied on its prior interpretation of § 31-294c as requiring a claimant to file a notice of claim as soon as the claimant becomes aware that he or she is suffering from symptoms of hypertension. Applying this standard, the board concluded that the commissioner reasonably could have found that Knudson's medical report, which indicated that the plaintiff

had recorded a blood pressure reading of 140/100 on June 20, 2000, and had been advised by Knudson to "watch his blood pressure," constituted "evidence of hypertension" of which the plaintiff was aware, thereby triggering the one year limitation period of § 31-294c (a). As we have indicated, however, we concluded in *Ciarlelli* that evidence that a claimant had elevated blood pressure readings, or had been advised by a physician to monitor his blood pressure, is insufficient to trigger the one year filing period prescribed by § 31-294c (a). Rather, there must be evidence establishing that the claimant knew that he or she suffered from hypertension, a showing that ordinarily will be made only upon proof that the claimant was informed of that diagnosis by a medical professional. It is clear, therefore, that the board applied an incorrect legal standard in upholding the commissioner's dismissal of the plaintiff's claim.

The defendant contends, nevertheless, that the board's decision is sustainable under *Ciarlelli* because the board also noted, in a footnote, that Knudson's medical report, "standing alone," was sufficient evidence to support the commissioner's finding that a medical professional had informed the plaintiff that he had hypertension as of June 20, 2000. The defendant maintains that the commissioner, as the trier of fact, was not required to credit Knudson's deposition testimony that the plaintiff did not, in fact, have hypertension in 2000 and, instead, reasonably could have concluded from Knudson's June 20, 2000 medical report that he did. The defendant further contends that the commissioner also was free to credit Knudson's direct testimony that he had informed the plaintiff of his diagnosis.

It is true, of course, that "[t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference ille-

gally or unreasonably drawn from them. . . . Neither the . . . board nor this court has the power to retry facts." (Citation omitted; internal quotation marks omitted.) *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006). Thus, we are bound by the subordinate facts found by the commissioner unless those findings are clearly erroneous. See, e.g., *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 725, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003). A factual finding is clearly erroneous "only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 726, 917 A.2d 540 (2007). Furthermore, it is well established that, as a general matter, "[i]t is the [trier of fact's] exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony . . . ." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 217 n.11, 932 A.2d 401 (2007).

Even if we were to conclude, in accordance with the determination of the board, that Knudson's medical report provided an arguable basis for the commissioner's factual finding that Knudson had diagnosed the plaintiff with hypertension in 2000, three years before the plaintiff filed his claim, we believe that the commissioner's reliance on that report cannot be justified in light of the broader record. As we noted previously, Knudson prepared the report for the plaintiff's primary care physician, Sheehan, to apprise Sheehan of the results of Knudson's evaluation of the plaintiff's diabetic condition. In the report, Knudson states, among other things, that the plaintiff presented with "elevated cho-

lesterol and hypertension" and was advised to "watch his blood pressure." In addition, in his deposition testimony, Knudson indicated that he had diagnosed the plaintiff with hypertension and that he had so informed the plaintiff. When examined further, however, Knudson clarified his direct testimony, explaining that the plaintiff had *not* suffered from hypertension between 1995 and 2002 because all but one of his blood pressure readings during that time period fell within normal limits. This testimony is corroborated by the report itself, which notes that "[the plaintiff] says his blood pressure is usually well into the normal range," based on the plaintiff's own readings. Knudson also explained that a diagnosis of hypertension generally requires multiple blood pressure readings over a period of time, particularly when, as in the present case, the patient's blood pressure is not consistently elevated. Thus, on the basis of Knudson's own testimony, it appears clear that, under the circumstances, the one elevated blood pressure reading was medically insufficient to warrant a diagnosis of hypertension and that Knudson thus did not render such a diagnosis because the data and other information available to Knudson did not support it. In light of Knudson's clarifying testimony—which, at no time after it was given did the defendant question Knudson about its substance—we are left with a definite and firm conviction that the commissioner incorrectly concluded that Knudson formally diagnosed the plaintiff with hypertension in 2000 and so informed the plaintiff of that diagnosis.

The decision of the compensation review board is reversed and the case is remanded with direction to reverse the decision of the workers' compensation commissioner and to remand the case to the commissioner for further proceedings according to law.

In this opinion the other justices concurred.