## EDWARD WABNO *v.* CITY OF DERBY
### (AC 30399)

Gruendel, Lavine and Espinosa, Js.

Argued November 7, 2011—officially released January 24, 2012

*Richard M. Franchi*, for the appellant (plaintiff).

*Joseph T. Coppola*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Edward Wabno, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner for the fourth district (commissioner) in which the commissioner concluded that the plaintiff's claim for benefits under the Heart and Hypertension Act, General Statutes § 7-433c, was

untimely.[1] While the plaintiff's appeal was pending, our Supreme Court issued its decision in *Ciarlelli* v. *Hamden*, 299 Conn. 265, 8 A.3d 1093 (2010), which clarified when the one year limitation period set forth in General Statutes § 31-294c (a) for claims brought pursuant to § 7-433c begins to run. We conclude that the commissioner's finding that the plaintiff had knowledge of his hypertension diagnosis beginning on May 6, 1999, more than one year before he filed his notice of claim, was not clearly erroneous. Accordingly, we affirm the decision of the board.

The following undisputed facts and procedural history are relevant to this appeal. The defendant, the city of Derby, hired the plaintiff as a part-time police officer in 1980, and in 1987, he was promoted to a full-time officer. In both 1980 and 1987, the plaintiff passed his preemployment physical examinations. The plaintiff's medical records reveal that on May 6, 1999, he was examined by his physician, Frank Spano. The plaintiff recorded a blood pressure reading of 130/84. Spano also made a notation that the plaintiff was taking "Prinizide" at the time.

In 2001 and 2002, because of a change in insurance coverage, the plaintiff switched physicians and saw Albert Walters, an internist. On October 15, 2001, the plaintiff recorded a blood pressure reading of 130/90 and a weight of 263 pounds. Walters made notations of "HTN" and that the plaintiff was taking "Zestoretic." On June 14, 2002, the plaintiff recorded a blood pressure reading of 150/96 and a weight of 277 pounds. Walters

---

[1] "[T]he one year limitation period of [General Statutes] § 31-294c (a) governs claims filed under § 7-433c." *Ciarlelli* v. *Hamden*, 299 Conn. 265, 278, 8 A.3d 1093 (2010). Section 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident . . . ."

made a notation that the plaintiff had high blood pressure. On November 1, 2002, the plaintiff recorded a blood pressure reading of 140/100 and a weight of 294 pounds. Walters again noted that the plaintiff had high blood pressure.

On December 4, 2003, the plaintiff was examined by Spano and recorded a blood pressure reading of 168/100. Under both the "Impression" section and the "Past Medical History" section of the report, Spano noted "HTN." On March 22, 2004, the plaintiff recorded a blood pressure reading of 148/100 and a weight of 296 pounds. Spano again made a notation of "HTN." He also noted: "Discussed at length my concerns. Above reviewed in detail."

On April 26, 2005, the plaintiff underwent a nuclear stress test conducted by Edward Kosinski, a cardiologist, who concluded that the plaintiff suffered from mild hypertension. Kosinski assigned the plaintiff a 9 percent permanent partial disability due to hypertension. In April, 2005, the plaintiff filed a notice of claim for benefits pursuant to § 7-433c.

On December 18, 2006, the commissioner held a hearing on the plaintiff's claim. The plaintiff testified that he could not recall whether a physician had ever advised him that he suffered from hypertension prior to May 6, 1999. He stated that he believed that Spano advised him of his elevated blood pressure at the examination on May 6, 1999, but that Spano did not tell him that he had hypertension. According to the plaintiff, at the examination on October 15, 2001, Walters informed him that the medication "Zestoretic" was for high blood pressure but never mentioned hypertension. The plaintiff stated that he believed that unrelated leg pain caused the rise in blood pressure at the examination on June 14, 2002, but that Walters never discussed this with him. The plaintiff also testified that, by December 4, 2003, he was

seeing Spano every three or four months for his high blood pressure.

The commissioner also admitted the deposition testimony of Henry Borkowski, a cardiologist retained by the defendant to perform a review of the plaintiff's medical records. Borkowski testified that both "Prinzide" and "Zestoretic" are utilized for the treatment of hypertension. He stated that the notation of "HTN" on the plaintiff's medical records stands for "hypertension." Borkowski also reviewed a medical report from April 27, 1998, in which the physician, Kenneth Lipow, noted that the plaintiff's "chronic medical illnesses" included "hypertension." Moreover, Borkowski concluded, in a medical report on October 26, 2005, that "the first evidence of systemic hypertension was a resting blood pressure of 150/90 on September 4, 1987," and that "[t]he first documented evidence of hypertension treatment is May 6, 1999."

On September 27, 2007, the commissioner issued her decision dismissing the plaintiff's claim as untimely. The commissioner found that the plaintiff "was provided with knowledge of the fact that he suffered from hypertension on several occasions with the earliest date being May 6, 1999." The plaintiff appealed from that decision to the board, which affirmed the commissioner's decision. The board concluded that there was sufficient evidence to support the commissioner's finding that the plaintiff suffered from hypertension and had knowledge of the condition in 1999. This appeal followed.

Before the parties filed their briefs with this court, we stayed the appeal pending our Supreme Court's decision in *Ciarlelli* v. *Hamden*, supra, 299 Conn. 265. Because *Ciarlelli* clarified the standard for determining whether a claim for benefits pursuant to § 7-433c is

untimely, we discuss that decision in some detail before addressing the plaintiff's claims in this appeal.

A claimant who proceeds under § 7-433c must satisfy the one year limitation period under the Workers' Compensation Act, General Statutes § 31-275 et seq., for an "accidental injury," which is defined as an injury "that may be definitely located as to the time when and the place where the accident occurred . . . ." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, supra, 299 Conn. 285 n.13, 288. Prior to *Ciarlelli*, "the board consistently applied [this court's] holding in [*Pearce* v. *New Haven*, 76 Conn. App. 441, 449–50, 819 A.2d 878, cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003)] for two propositions: (1) [a] claimant with hypertensive symptoms is required to file a notice of claim when he is told [that] he has high blood pressure readings, even if he has not been placed on medication, lost time from work or become disabled . . . and (2) the commissioner has considerable discretion to determine when an injury has occurred for purposes of deciding whether a claim is timely." (Citations omitted; internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, supra, 290–91.

In *Ciarlelli*, however, our Supreme Court concluded that this prior standard was untenable. See id., 296–99. The plaintiff in that case, David Ciarlelli, visited his physician on numerous occasions between 1996 and 2004, and he usually recorded blood pressure readings that were "either normal or 'borderline' for hypertension." Id., 269. In 2000, the physician advised Ciarlelli "to monitor his blood pressure at home and to watch his weight and to diet." Id., 270. The physician concluded that Ciarlelli suffered from " 'white coat effect,' " which occurs when a patient's blood pressure increases as a result of anxiety about visiting a physician, because Ciarlelli's blood pressure readings usually were in the normal range when he measured it himself at home.

238

Id. In May, 2004, Ciarlelli recorded "abnormally high" blood pressure readings, and his physician prescribed him an antihypertensive medication at that time. Id. Shortly thereafter, Ciarlelli filed a notice of claim for hypertension benefits. Id. Ciarlelli introduced into evidence at a hearing before the commissioner the deposition testimony of his physician, "who stated that he did not consider [Ciarlelli] to be hypertensive until May 11, 2004 . . . ." Id., 271. Ciarlelli testified that his physician never informed him that he was hypertensive before May 11, 2004. Id. Ciarlelli also testified that when his physician recommended that he lose weight and diet, the physician "did not mention high blood pressure as the reason for the recommendation." Id.

The commissioner dismissed Ciarlelli's claim as untimely on the basis of the deposition testimony of a cardiologist, retained by the defendant town of Hamden, who reviewed Ciarlelli's medical records and testified that Ciarlelli recorded hypertensive blood pressure readings between 2000 and 2003. Id. The commissioner concluded, in response to Ciarlelli's motion for articulation, that the elevated blood pressure readings, and his physician's advice "about watching his diet, losing weight, monitoring his blood pressure at home and making lifestyle changes," alerted Ciarlelli to "a potential claim for hypertension benefits," thus rendering Ciarlelli's notice of claim untimely. Id., 272–73. Ciarlelli appealed to the board, which affirmed the commissioner's decision. Id., 273. The board concluded that *Pearce* v. *New Haven*, supra, 76 Conn. App. 450, required claimants to file a notice of claim when they become aware that they have symptoms of hypertension. *Ciarlelli* v. *Hamden*, supra, 299 Conn. 273–74.

On appeal to our Supreme Court, Ciarlelli argued that the limitation period did not begin to run until he was informed by his physician that he suffered from hypertension in May, 2004. Id., 276. The court first examined

the standard then applied by the board and stated that it was inconsistent with the requirement that "a claimant may recover benefits for hypertension only if he suffers from that condition; a claimant is not entitled to benefits merely because he exhibits symptoms consistent with hypertension, such as elevated blood pressure, from time to time." Id., 299. The court explained that "the standard presently applied by the board places the intended beneficiaries of § 7-433c in the untenable position of having to diagnose themselves with hypertension, on the basis of their symptoms, or having to run the risk of losing benefits under that statute." Id. Rather, according to the court, "it stands to reason that a formal diagnosis of hypertension or heart disease, communicated to an employee by his or her physician, constitutes the 'injury' that triggers the running of the limitation period of § 31-294c." Id.

The court then concluded that "the one year limitation period for claims under § 7-433c begins to run only when an employee is informed by a medical professional that he or she has been diagnosed with hypertension. In many respects, this simply represents a return to the standard that the board applied prior to *Pearce*,[2] which . . . more faithfully adhered to the statutory definition of accidental injury in view of the fact that, as a general matter, a formal diagnosis of hypertension can be definitely located in time and place. Thus, although the issue of when the limitation period of § 31-294c begins to run in any given case remains a question of fact for a workers' compensation commissioner, evidence that the employee merely knew of past elevated blood pressure readings, or was advised by his or her

---

[2] Earlier in its decision, the court stated that prior to *Pearce*, the board "had concluded that the limitation period of § 31-294c begins to run on hypertension claims under § 7-433c only when the claimant's hypertension becomes disabling, which . . . has been defined by the need for medical treatment and prescription medicine." *Ciarlelli* v. *Hamden*, supra, 299 Conn. 296–97.

physician to make certain lifestyle changes in response thereto, is not sufficient to trigger the limitation period in the absence of evidence that the employee formally had been diagnosed with hypertension by a medical professional and advised of the diagnosis." Id., 300–301.

Immediately thereafter, in a footnote, the court stated: "Of course, this standard is not so inflexible as to require a finding in all cases that the medical professional used the term 'hypertension' in communicating the diagnosis to the employee. For example, evidence that an employee was prescribed antihypertensive medication for the treatment of high blood pressure related to hypertension, and not for some other illness, likely would support a finding that the employee formally had been diagnosed with hypertension and knew, or should have known, of that diagnosis." Id., 301 n.18.

Having examined *Ciarlelli*, we begin our analysis of the plaintiff's appeal by setting forth the applicable standard of review. "[T]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Neither the . . . board nor this court has the power to retry facts. . . . Thus, we are bound by the subordinate facts found by the commissioner unless those findings are clearly erroneous. . . . A factual finding is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Furthermore, it is well established that, as a general matter, [i]t is the [trier of fact's] exclusive province to weigh the conflicting evidence, determine the credibility of the witnesses and determine whether to accept

some, all or none of a witness' testimony . . . ." (Citations omitted; internal quotation marks omitted.) *Brymer* v. *Clinton*, 302 Conn. 755, 764–65, 31 A.3d 353 (2011).

On appeal, the plaintiff claims that the board applied the wrong standard in affirming the commissioner's decision. Specifically, the plaintiff argues that, in reasoning that the evidence of elevated blood pressure readings and antihypertensive medication supported the finding that the plaintiff knew he had hypertension, the board applied the pre-*Ciarlelli* standard. According to the plaintiff, if the board had applied the correct standard, as established by *Ciarlelli*, then it would have determined that the limitation period did not begin to run until he was informed of his hypertension in April, 2005, by Kosinski. The defendant, on the other hand, argues that the notations in the medical records that the plaintiff had a history of hypertension and the evidence that he was prescribed medication to treat hypertension since 1999 were sufficient to support the commissioner's finding. We agree with the defendant.

Although the board affirmed the commissioner's decision, at least in part, using a pre-*Ciarlelli* standard,[3] we conclude that the commissioner's findings satisfy the standard set forth in *Ciarlelli*, and thus affirm the board's decision on that basis. We note at the outset that this case falls within the spectrum between the two bright lines drawn by *Ciarlelli*. As discussed, our Supreme Court made clear that, at one end, evidence that the claimant merely knew of hypertensive symptoms is insufficient to trigger the limitation period. See

[3] The board cited one of its prior decisions that held that the claim was untimely even though the claimant filed it shortly after he formally was diagnosed with hypertension. The board also relied on the standard from its decision in *Ciarlelli* v. *Hamden*, No. 5098 CRB-3-06-6 (April 1, 2008), which, as discussed previously, subsequently was reversed by our Supreme Court. See *Ciarlelli* v. *Hamden*, supra, 299 Conn. 301.

*Ciarlelli* v. *Hamden,* supra, 299 Conn. 299–301. At the other end, evidence that a medical professional explicitly informed the claimant of a hypertension diagnosis is sufficient. See id.; see also *Brymer* v. *Clinton,* supra, 302 Conn. 764. Somewhere in the middle, however, lies a case such as this. See *Ciarlelli* v. *Hamden,* supra, 301 n.18. We conclude, on the basis of our review of the record, that the commissioner did not err in determining that the plaintiff's claim was untimely in light of the evidence that he was prescribed antihypertensive medication and the "hypertension" notations in the plaintiff's medical records.

The commissioner found that the plaintiff "was *provided with knowledge of the fact* that he suffered from hypertension on several occasions with the earliest date being May 6, 1999." (Emphasis added.) This statement is the functional equivalent of a finding that the plaintiff was diagnosed with hypertension and informed of that diagnosis, and thus, as of that date, was "accidentally injured," as *Ciarlelli* requires.

We now analyze the sufficiency of the evidence supporting that finding. The record reflects three occasions from 1999 and earlier that support the commissioner's finding. First, as explained by Borkowski in a report reviewing the plaintiff's medical records, the plaintiff recorded a hypertensive blood pressure reading of 150/90 on September 4, 1987. In another medical report from April 27, 1998, Lipow noted that the plaintiff's "chronic medical illnesses" included "hypertension." Lastly, in a medical report from May 6, 1999, Spano noted that the plaintiff was taking "Prinizide," which Borkowski testified is utilized for the treatment of hypertension. The commissioner found the plaintiff's testimony that Spano advised him of his elevated blood pressure at that examination to be credible. Notably, however, the commissioner did not state that she found credible the plaintiff's testimony that Spano failed to tell

him that he had hypertension. See *Brymer* v. *Clinton,* supra, 302 Conn. 765 (commissioner determines credibility of witnesses and whether to accept some, all or none of witness' testimony).

The commissioner also reasonably could have viewed the post-1999 evidence in the record as supporting the inference that the plaintiff previously was diagnosed with hypertension and informed of that diagnosis. For example, in 2001, 2003 and 2004, the plaintiff's medical records contained notations indicating hypertension. Significantly, on a medical report from March 22, 2004, below the notation "HTN," Spano noted: "Discussed at length my concerns. Above reviewed in detail." Additionally, on a medical report from October 15, 2001, Walters noted that the plaintiff was taking "Zestoretic," which Borkowski testified is a medication utilized for the treatment of hypertension. The plaintiff also consistently recorded elevated blood pressure readings from 2001 to 2004.

Contrary to the plaintiff's assertions, *Ciarlelli* does not require the commissioner to believe the plaintiff's testimony that he was not informed of his hypertensive condition until 2005, nor does *Ciarlelli* prohibit the commissioner from relying on expert testimony. Therefore, although the commissioner did not make a finding that a "medical professional used the term 'hypertension' in communicating the diagnosis"; *Ciarlelli* v. *Hamden,* supra, 299 Conn. 301 n.18; the record—especially the evidence of antihypertensive medication and medical records notations indicating a history of hypertension—supports the commissioner's finding.

The facts of this case are readily distinguishable from *Ciarlelli.* Unlike in this case, Ciarlelli's physician testified that he did not consider Ciarlelli to be hypertensive until just before he filed his claim. Id., 271; see also *Brymer* v. *Clinton,* supra, 302 Conn. 760. While Ciarlelli

filed his claim within weeks of being prescribed antihypertensive medication; *Ciarlelli* v. *Hamden*, supra, 299 Conn. 270; the plaintiff in this case filed his claim almost six years after the first documentation of antihypertensive medication treatment. Additionally, unlike in this case, the commissioner in *Ciarlelli* failed to identify a date of injury. Id., 296.

In light of the foregoing, we do not have a definite and firm conviction that a mistake has been made. Accordingly, we conclude that the commissioner was not clearly erroneous in finding that the plaintiff had knowledge of his hypertension diagnosis beginning on May 6, 1999, and therefore, the plaintiff's claim was untimely.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.