43 A.3d 607 (2012)
304 Conn. 820
418 MEADOW STREET ASSOCIATES, LLC
v.
CLEAN AIR PARTNERS, LLC.
No. 18699.
Supreme Court of Connecticut.
Argued January 6, 2012.
Decided May 22, 2012.
*609 Andrew M. McPherson, with whom, on the brief, was William J. Kupinse, Jr., for the appellant (plaintiff).
*610 Michael J. Leventhal, Westport, for the appellees (defendants).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN and HARPER, Js.
ZARELLA, J.
This case requires us to define the contours of the term "adverse" in General Statutes § 34-187(b), which excludes the vote of a member of a limited liability company authorizing the company to bring a lawsuit when that member has an interest in the outcome of the lawsuit that is adverse to the company's interest. On appeal, the plaintiff, 418 Meadow Street Associates, LLC, claims that the Appellate Court incorrectly concluded that the trial court properly had determined that the plaintiff lacked standing to bring the present action against the defendant, Clean Air Partners, LLC.[1] The plaintiff argues specifically that the Appellate Court incorrectly concluded that the trial court properly had interpreted § 34-187(b) narrowly and that, under a correct interpretation of the statute, the plaintiff has the requisite authorization and standing to bring the present action. The defendant responds that the Appellate Court properly upheld the trial court's interpretation of the statute and deferred to its findings of fact, which support the determination that the plaintiff lacked standing. The defendant also advances an alternative ground for affirmance of the Appellate Court's judgment, namely, that the plaintiff did not bring the present action in accordance with its operating agreement, and, therefore, the action was not properly authorized. We conclude that the Appellate Court improperly affirmed the trial court's judgment because an "adverse" interest, as that term is used in § 34-187(b), is not limited to circumstances in which a member has a direct, adverse proprietary interest. Accordingly, we reverse the judgment of the Appellate Court.
The record reveals the following procedural history and relevant facts as found by the trial court. The plaintiff, a Connecticut limited liability company, owns and manages a commercial office building located at 418 Meadow Street in the town of Fairfield. From at least 1998 until 2005, Steven Levine and Barbara Levine, who are spouses, held equal ownership interests in the plaintiff. In 2005, Steven Levine sold his 50 percent interest to Michael Weinshel, with Barbara Levine retaining her 50 percent interest. Thereafter, Weinshel sold a 16.67 percent interest to Mark Wynnick, retaining a 33.33 percent interest. Thus, at the time the present action was commenced, the plaintiff was owned by Barbara Levine, Weinshel and Wynnick, who respectively held 50 percent, 33.33 percent, and 16.67 percent interests in the plaintiff.
The defendant leases and occupies space in the plaintiff's building, and pays monthly rent to the plaintiff for use of the space. Steven Levine has a 20 percent ownership interest in the defendant.[2] *611 Barbara Levine holds no proprietary interest in the defendant. At some point during the defendant's occupancy of the plaintiff's building, a dispute arose between the plaintiff and the defendant over the scope of the lease and payment of rent.[3] This dispute resulted in Weinshel and Wynnick bringing the present action, in the name of the plaintiff, against the defendant to enforce the lease and to collect rent. Barbara Levine expressly disapproved of bringing a lawsuit against the defendant, notified Weinshel and Wynnick of her disapproval, and did not vote to bring the action.
As a special defense to the plaintiff's complaint, the defendant asserted that the plaintiff lacked corporate authority to bring the action and, therefore, lacked standing. The defendant claimed that the plaintiff's operating agreement provides that the plaintiff shall not undertake certain activities, including the bringing of a lawsuit, without the approval of members holding a majority ownership interest in the plaintiff.[4] Because Barbara Levine did not consent to retaining counsel or to bringing the lawsuit, and because Weinshel and Wynnick collectively hold only a 50 percent interest in the plaintiff, there was no approval by members holding a majority ownership interest. Thus, the defendant argued, the plaintiff lacked standing to maintain the present action.
The plaintiff, in response, claimed that it had standing and was properly authorized to bring the action because Barbara Levine had an interest in the outcome of the action that was adverse to the interest of the plaintiff by virtue of her husband's ownership interest in the defendant. Relying on § 34-187(b),[5] the plaintiff *612 contended that Barbara Levine's vote was properly excluded when Weinshel and Wynnick decided to bring an action against the defendant because she had an interest in the outcome of the action that was adverse to the plaintiff's due to her husband's interest in the defendant and due to another pending action in which Weinshel and Wynnick had filed a counterclaim alleging mismanagement by Barbara Levine.[6] According to the plaintiff, because Weinshel's and Wynnick's interests comprised the majority ownership interests under these circumstances, the lawsuit against the defendant was properly authorized.
After holding a hearing on the plaintiff's complaint and receiving posttrial briefs on the defendant's special defense that the plaintiff lacked standing, the trial court issued a memorandum of decision. The trial court interpreted the meaning of "an interest . . . adverse to the interest of the limited liability company"; General Statutes § 34-187(b); and concluded that a member must have a proprietary, or ownership, interest in the defendant in order for his or her vote to be excluded under § 34-187(b). Finding that "Barbara Levine [was] not a party to the action and [that] she [did] not have a proprietary interest in [the defendant]"; (emphasis added); the trial court concluded that "[s]he [could not] be assigned an interest in the case simply because she is the wife of a co-owner of the defendant." The court determined that "the plaintiff lack[ed] standing because Barbara Levine's interest [was] insufficient to disqualify her as a voting member" and rendered judgment for the defendant.[7]
The plaintiff appealed to the Appellate Court from the trial court's judgment, arguing that the trial court improperly found that the plaintiff lacked standing to maintain this action. The Appellate Court noted that, "[a]lthough the determination that a plaintiff lacks standing is a conclusion of law that is subject to plenary review, [the court] conduct[s] that plenary review . . . in light of the trial court's findings of fact, which . . . will not [be] overturn[ed] unless they are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) 418 Meadow Street Associates, LLC v. Clean Air Partners, LLC, 123 Conn.App. 416, 421, 1 A.3d 1194 (2010).
The Appellate Court, applying the foregoing standard of review, concluded that "the record support[ed] the [trial] court's finding that Barbara Levine had no individual proprietary interest in the outcome of the action adverse to the plaintiff's interest and that her husband's ownership interest was not significant enough to assign her with an interest adverse to the outcome of the action based on their personal relationship alone." (Emphasis added.) Id., at 422, 1 A.3d 1194. The Appellate Court concluded further that, "[a]t the time the vote was taken to pursue litigation, Barbara Levine was not facing claims *613 against her by Weinshel and Wynnick, and, therefore, the [trial] court could have found that those claims, which were nonexistent at the time the present case was filed, did not create an adverse interest to the outcome of the action. Accordingly, the [trial] court's decision was not erroneous in light of the record."[8] Id., at 423, 1 A.3d 1194.
Thereafter, this court granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff lacked standing to bring this action, since one of its member's votes should not have been excluded pursuant to. . . § 34-187(b) on the ground that she had `an interest in the outcome of the suit that is adverse to the interest of the [plaintiff]?'" 418 Meadow Street Associates, LLC v. Clean Air Partners, LLC, 298 Conn. 932, 5 A.3d 490 (2010). Additional facts will be set forth as necessary.

I
The issue in this appeal is whether the Appellate Court properly concluded that the plaintiff lacked standing on the basis of its interpretation of § 34-187(b).[9] We conclude that the Appellate Court improperly interpreted the statute, and, therefore, we reverse the judgment of the Appellate Court.
The plaintiff's appeal requires us to interpret § 34-187(b), specifically, the meaning of the phrase, "an interest in the outcome of the suit that is adverse to the interest of the limited liability company. . . ." In other words, we must determine when a member's interest is sufficiently adverse to the limited liability company's interest such that the member's vote is excluded pursuant to § 34-187(b).[10]
*614 We begin with the applicable standards of review. First, issues of statutory construction are questions of law over which we exercise plenary review. E.g., Stewart v. Watertown, 303 Conn. 699, 710, 38 A.3d 72 (2012). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Internal quotation marks omitted.) Wilcox v. Schwartz, 303 Conn. 630, 638-39 n.5, 37 A.3d 133 (2012).
Conversely, when reviewing findings of fact, we defer to the trial court's determination unless it is clearly erroneous. See, e.g., Goodspeed Airport, LLC v. East Haddam, 302 Conn. 70, 76, 24 A.3d 1205 (2011). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. "Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) McBurney v. Paquin, 302 Conn. 359, 368, 28 A.3d 272 (2011).
According to the trial court, "Barbara Levine is not a party to the action, and she does not have a proprietary interest in [the defendant]. She cannot be assigned an interest in the case simply because she is the wife of a co-owner of the defendant." In upholding the trial court's conclusion, the Appellate Court stated that "the record support[ed] the [trial] court's finding that . . . [Barbara Levine's] husband's ownership interest was not significant enough to assign her with an interest adverse to the outcome of the action based on their personal relationship alone." 418 Meadow Street Associates, LLC v. Clean Air Partners, LLC, supra, 123 Conn.App. at 422, 1 A.3d 1194. Thus, the Appellate Court's conclusion is slightly *615 different from the conclusion that the trial court reached. The trial court's decision suggests that, under the facts of this case, § 34-187(b) would not have excluded Barbara Levine's vote because she did not have a direct, proprietary interest in the defendant. Furthermore, the trial court stated that the spousal relationship alone was not enough to support a claim that a member has an interest adverse to the interest of the limited liability company. The Appellate Court's decision, on the other hand, suggests that a spousal relationship may be sufficient to support an adverse interest claim in some circumstances, depending on the extent of the spouse's interest in the defendant company. In other words, the Appellate Court apparently accepted the proposition that a member's interest could be considered adverse by virtue of his or her spouse's interest but that, in the present case, Steven Levine's interest in the defendant was too minor to attribute it to Barbara Levine. We need not address the differences between the trial court's and Appellate Court's decisions, however, because our decision turns solely on a matter of statutory interpretation.
We begin with the plain language of the statute. Section 34-187(b) does not define what constitutes an adverse interest, nor is that concept defined elsewhere in the Connecticut Limited Liability Company Act, of which § 34-187(b) is a part.[11] "When a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) Potvin v. Lincoln Service & Equipment Co., 298 Conn. 620, 633, 6 A.3d 60 (2010); see also General Statutes § 1-1(a). As almost universally defined, "adverse" means opposed to one's interest. See, e.g., Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) (defining "adverse" as "acting against or in a contrary direction: hostile," or "opposed to one's interests . . . unfavorable," or "opposite in position"); see also Black's Law Dictionary (9th Ed. 2009) (defining "adverse" as "[a]gainst; opposed [to]," or "[h]aving an opposing or contrary interest, concern, or position," or "[c]ontrary [to] or in opposition [to]," or "[h]ostile"); cf. Black's Law Dictionary, supra (defining "adverse interest" as "[a]n interest that is opposed to or contrary to that of someone else").
We need not go beyond the plain language of the statute, as the common usage of the term "adverse," as well as the common definition of "adverse interest," when applied to § 34-187(b), does not lead to absurd or unworkable results.[12] See *616 General Statutes § 1-2z. Simply put, the term "adverse" in § 34-187(b) encompasses any interest of a member that is contrary or opposed to the limited liability company's interest in the outcome of the litigation. We therefore conclude, contrary to the trial court, that the statute's application is not limited to circumstances in which a member's adverse interest is a proprietary one.
We also conclude that, when a spouse of a limited liability company member holds an interest or maintains a position of control in a defendant company, as in the present case, that member's interest properly is considered adverse to the outcome of a lawsuit that the limited liability company brings against the defendant company. The law generally affords a different treatment to spouses than to other parties, and we see no reason to deviate from that treatment in the present case. For example, under our fraudulent transfer law, a spouse is considered an insider to the transferee and treated specially. See General Statutes § 52-552b (7) ("`[i]nsider' includes: [A] [i]f the debtor is an individual, [i] a relative of the debtor or of a general partner of the debtor . . . [B] if the debtor is a corporation . . . [vi] a relative of a general partner, director, officer or person in control of the debtor; [C] if the debtor is a partnership . . . [ii] a relative of a general partner in, a general partner of, or a person in control of the debtor"); see also General Statutes § 52-552e (a) ("[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: [1] With actual intent to hinder, delay or defraud any creditor of the debtor"); General Statutes § 52-552e (b) ("[i]n determining actual intent under subdivision [1] of subsection [a] of this section, consideration may be given, among other factors, to whether: [1] The transfer or obligation was to an insider"). Also instructive is the statutory scheme governing conflicting interest transactions for nonstock corporations, which presumes a conflict of interest in transactions between a corporation and any person related to the corporation's director. See General Statutes § 33-1127(1) ("`[d]irector's conflicting interest transaction' means a transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation . . . [C] respecting which, at the relevant time, the director knew that a related person was a party or had a material financial interest"); General Statutes § 33-1127(5) ("`[r]elated person' means: [A] The director's spouse, or a parent or sibling thereof"). Simply put, under § 34-187(b), the sweeping scope of the term "adverse" requires that the interests of a member's spouse be imputed to the member.
Affording § 34-187(b) broad treatment is consistent with the principle that limited liability company law provides a set of default rules governing such companies, which organizers and members can elect to modify at their discretion through the company's operating *617 agreement.[13] Under § 34-187(b), the default rule is that a member will be ascribed the interests of his or her spouse. Thus, a member's vote to bring or not to bring a lawsuit will be excluded when the limited liability company's interest in the outcome of the lawsuit is adverse, or contrary to, the interest of that member or the interest of that member's spouse. Of course, organizers and members can always elect to proceed differently by drafting or amending the limited liability company's operating agreement so as to allow a member's vote to be included even when his or her spouse's interest may conflict with the company's interest. See General Statutes § 34-187(a) ("[e]xcept as otherwise provided in an operating agreement"). Thus, even though we read § 34-187(b) as categorically disqualifying a member's vote when his or her spouse has an interest in the outcome of a lawsuit that is adverse to the limited liability company's interest, members can always elect whether they want to be bound by that statute.
For that reason, we envision no situation in which this categorical rule would have an inequitable effect on a limited liability company's operation, and, therefore, it will not lead to an unworkable result. Cf. General Statutes § 1-2z. A categorical rule is preferable to the alternative because limited liability company members will be aware from the outset whether their votes may be excluded because of a spouse's interest. It avoids any need to determine the nature of the relationship between the member and his or her spouse (e.g., the extent to which they share in each other's financial gains and losses), and the nature of the relationship between the spouse and the defendant company (e.g., whether the spouse holds a sufficient interest in the company). Simply put, such a rule prevents unnecessary debate, which likely may lead to litigation among members as to whether their votes should be counted. Should the limited liability company members not wish to be bound by this rule, the statute allows them to modify the operating agreement to provide for a different rule in calculating votes when deciding to bring a lawsuit in the name of the limited *618 liability company. Accordingly, we conclude that the Appellate Court improperly upheld the trial court's determination that the plaintiff lacked standing because § 34-187(b) encompasses only adverse proprietary interests.

II
The defendant offers an alternative ground for affirming the judgment of the Appellate Court.[14] The thrust of the defendant's argument is that, because the operating agreement is silent as to whether it adopts or incorporates by reference § 34-187, the statute does not apply to the plaintiff.[15] Although we conclude that the defendant's argument is meritless, we explain why it is in the interest of providing additional clarity to the law governing limited liability companies.
The defendant's argument misconstrues both the meaning of the phrase, "[e]xcept as otherwise provided in an operating agreement," in § 34-187(a), as well as the general operation of the law governing limited liability companies. Contrary to the defendant's claim, § 34-187 applies to all limited liability companies unless the operating agreement provides for a different rule that conflicts with the statute or provides that the statute does not apply at all. That is the plain meaning of the statutory language, "[e]xcept as otherwise provided. . . ." (Emphasis added.) General Statutes § 34-187(a). Thus, if the operating agreement is silent as to the applicability of the statute, the statute controls.[16] See, e.g., Ott v. Monroe, 282 Va. 403, 410, 719 S.E.2d 309 (2011) (holding that statutory provision governing dissociation was applicable to limited liability company because operating agreement did not "address statutory dissociation and [did] not state an intent to supersede" statutory provision and, therefore, that "it lack[ed] specific language that would constitute an exception to the rule of dissociation set forth in [the statute]"). In other words, and as we stated previously; see part I of this opinion; the statutory scheme controls and provides for the default method of operation, unless the organizers or members of the limited liability company contract, through the operating agreement, for another method of operation. Indeed, this is one of the foundational principles of the law governing limited liability companies.[17]
*619 In the present case, the operating agreement does not include any provision concerning how to calculate votes for the purpose of bringing a lawsuit in the plaintiff's name. Thus, § 34-187 controls. Accordingly, we reject the defendant's alternative ground for affirmance.
For the foregoing reasons, we conclude that the Appellate Court incorrectly determined that the trial court properly interpreted § 34-187(b) in finding that the plaintiff lacked standing. Instead, it is clear, as a matter of law, that the plaintiff properly excluded Barbara Levine from voting her interest in determining whether to bring the present action because her interest in the outcome of the action was adverse to that of the plaintiff's in light of her husband's ownership interest in the defendant.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case to that court for further proceedings according to law.
In this opinion the other justices concurred.
NOTES
[1] Clean Air Group, Inc., which was added as a defendant in the present action, is the successor in interest to the defendant, Clear Air Partners, LLC. In the interest of simplicity, we refer to them collectively as the defendant throughout this opinion.
[2] Neither party disputes that Steven Levine holds an ownership interest in the defendant, although the defendant, in its brief and at oral argument, represents that Steven Levine's ownership interest was only 1 percent when the present action was commenced; the trial court, however, found his interest to be 20 percent at that time. To the extent that the defendant is challenging the trial court's finding on appeal, we conclude that the finding is not clearly erroneous. See, e.g., Brymer v. Clinton, 302 Conn. 755, 765, 31 A.3d 353 (2011) ("[a] factual finding is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made" [internal quotation marks omitted]). The record reveals that Steven Levine, Barbara Levine and James McManus, the defendant's chief financial officer, all testified that Steven Levine's ownership interest in the defendant has ranged from 1 percent to 100 percent, and McManus specifically testified that Steven Levine owned a 20 percent interest when the present action was commenced.
[3] The nature of the dispute is not relevant for purposes of this opinion but can be found in the trial court's memorandum of decision. See 418 Meadow Street, LLC v. Clean Air Partners, LLC, Superior Court, judicial district of Fairfield, Docket No. FBT-CV-07-5006781-S (January 8, 2009).
[4] The operating agreement provides in relevant part: "5.1.2. General Powers. . . . Notwithstanding anything to the contrary in this [a]greement, the [m]anagers shall not undertake any of the following without the approval of those [m]embers holding a majority of the [p]ercentages:

* * *
"5.1.2.10. make any and all expenditures. . . including, without limitation, all legal, accounting and other related expenses incurred in connection with the organization and financing and operation of the [c]ompany. . . ."
The operating agreement is silent, however, as to whether and when a member may be disqualified from voting his or her interest.
[5] General Statutes § 34-187 provides: "(a) Except as otherwise provided in an operating agreement, suit on behalf of the limited liability company may be brought in the name of the limited liability company by: (1) Any member or members of a limited liability company, whether or not the articles of organization vest management of the limited liability company in one or more managers, who are authorized to sue by the vote of a majority in interest of the members, unless the vote of all members shall be required pursuant to subsection (b) of section 34-142; or (2) any manager or managers of a limited liability company, if the articles of organization vest management of the limited liability company in one or more managers, who are authorized to sue by the vote required pursuant to section 34-142.

"(b) In determining the vote required under section 34-142 for purposes of this section, the vote of any member or manager who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company shall be excluded."
[6] In the other pending action, Barbara Levine was seeking to dissolve the plaintiff.
[7] After determining that the plaintiff lacked standing, the trial court nevertheless ruled on the merits of the plaintiff's claim in the defendant's favor.
[8] Noting that the trial court also reached the merits of the plaintiff's complaint; see footnote 7 of this opinion; the Appellate Court set aside the trial court's judgment and remanded the case with direction to modify the judgment in accordance with the trial court's decision that it lacked subject matter jurisdiction. See 418 Meadow Street Associates, LLC v. Clean Air Partners, LLC, supra, 123 Conn. App. at 424, 1 A.3d 1194 ("[t]he form of the judgment is improper, the judgment is set aside and the case is remanded with direction to render judgment dismissing the action for lack of subject matter jurisdiction"); see also id., at 418 n. 4, 1 A.3d 1194 ("[a]fter concluding that the plaintiff lacked standing, the [trial] court should have dismissed the action for lack of subject matter jurisdiction and proceeded no further").
[9] The parties present arguments concerning the proper standard of review applied by the Appellate Court. Because our decision turns solely on the proper interpretation of the statute, we need not address the parties' arguments with regard to the standard of review applicable to other issues presented in the trial court or on appeal to the Appellate Court.
[10] For purposes of clarity, and even though it is not directed disputed by the parties, we repeat the Appellate Court's conclusion that "the language of § 34-187(b) provides that an individual is excluded from a vote `for purposes of this section' when such individual has an interest in the outcome of `the suit. . . .' General Statutes § 34-187(b). The statute's reference to the `purposes of this section' and `the suit' . . . suggest[s] that the adverse interest must be in the outcome of the action that is being voted on pursuant to § 34-187[a], not in another action pending with different parties and separate issues. The statute, on its face, indicates that an individual's exclusion for an adverse interest in the outcome of the suit must pertain to the litigation in question for the vote." 418 Meadow Street Associates, LLC v. Clean Air Partners, LLC, supra, 123 Conn.App. at 423, 1 A.3d 1194.

We note that the plaintiff argues that the court, in determining whether Barbara Levine's interest was adverse to the interest of the plaintiff, may take notice of other pending litigation between the plaintiff and Barbara Levine. The plaintiff's argument is problematic for two reasons. First, it asks the court retroactively to impute an adverse inference to Barbara Levine's objection to bringing the present action on the basis of a lawsuit filed by the plaintiff against her after the plaintiff decided to bring the present action. Second, it seeks to apply the standards for breach of fiduciary duty, as alleged in the subsequent lawsuit, to § 34-187(b). Whether Barbara Levine breached her fiduciary duty by objecting to bringing the present action is an inquiry wholly separate from whether she had an interest in the outcome of the present litigation that is adverse to the interest of the plaintiff. Although we need not reach the merits of the plaintiff's argument in this regard, we are skeptical that such reasoning could prevail in another case.
[11] We note that General Statutes § 34-101 provides definitions for terms in the act, including the following: "[U]nless the context otherwise requires:

* * *
"(11) `Limited liability company membership interest' or `interest' or `interest in the limited liability company' means a member's share of the profits and losses of the limited liability company and a member's right to receive distributions of the limited liability company's assets, unless otherwise provided in the operating agreement."
We conclude that this definition does not apply to the use of the word "interest" in § 34-187(b), quite simply because such an application would be nonsensical, as the context specifically refers to an interest in the outcome of a lawsuit. See, e.g., Barrett v. Montesano, 269 Conn. 787, 797, 849 A.2d 839 (2004) ("we interpret statutes to avoid bizarre or nonsensical results" [internal quotation marks omitted] ).
[12] Similarly, we conclude that the common definition of the word "interest" as an "advantage" or "benefit"; Merriam-Webster's Collegiate Dictionary, supra; also applies to the statute. Although the term "interest" is subject to more than one definition, and is also defined more specifically in other statutes governing different types of business organizations; see, e.g., General Statutes § 34-9(8); General Statutes § 34-301(5); see also footnote 11 of this opinion; we conclude that the context of § 34-187(b), combined with the lack of a more specific definition in this statute, demonstrates the legislature's intent that the common meaning of this term should apply. See, e.g., State v. Desimone, 241 Conn. 439, 455, 696 A.2d 1235 (1997) (in absence of compelling reason, court will not impute to legislature intent that is contrary to plain statutory language).
[13] Because the present case concerns a relatively recent statutory development, we pause to summarize the background of limited liability companies. "A limited liability company. . . has been described as an unincorporated association of investors, called members in [common] parlance, whose personal liability for obligations of the venture are limited to the amount invested. . . . It is a distinct business entity that adopts and combines features of both partnership and corporate forms. . . .

"From the partnership form, the [limited liability company] borrows characteristics of informality of organization and operation, internal governance by contract, direct participation by members in the company, and no taxation at the entity level. . . . From the corporate form, the [limited liability company] borrows the characteristic of protection of members from investor-level liability. . . . Flexible in nature, the [limited liability company] allows direct involvement and control by its members yet also permits a corporate representative form of governance if the entity elects to be governed by managers." Gottsacker v. Monnier, 281 Wis.2d 361, 370-71, 697 N.W.2d 436 (2005).
Wisconsin's limited liability company law is similar in many regards to Connecticut's, and Wisconsin has a statute identical in all material respects to § 34-187(b). See Wis. Stat. § 183.1101(1) (2009-10). The key defining feature or purpose of a limited liability company, as distinguished from other corporate forms, is that it is "a business entity providing limited liability, flow-through taxation, and simplicity." (Internal quotation marks omitted.) Gottsacker v. Monnier, supra, 281 Wis.2d at 372, 697 N.W.2d 436; see also Ott v. Monroe, 282 Va. 403, 408, 719 S.E.2d 309 (2011) ("[t]he [limited liability company] is a hybrid entity, borrowing from both the corporate and partnership models to combine a corporation's limited liability for its owners with a partnership's pass-through treatment for income tax purposes" [internal quotation marks omitted]).
[14] We note that the plaintiff claims that the defendant did not properly raise its alternative ground for affirmance. Our analysis of the defendant's alternative ground for affirmance is not prejudicial to the plaintiff, however, because we reject it, and, therefore, we need not address the plaintiff's claim. Cf. Furs v. Superior Court, 298 Conn. 404, 413, 3 A.3d 912 (2010) ("[w]e have the discretion to review [improperly presented] claims [of alternative grounds for affirmance] . . . but do not review them when such review would prejudice the opposing party" [citation omitted]).
[15] In the defendant's own words, "[t]he language in the operating agreement does not include any provision for the exclusion of a member's vote due to an adverse interest. The operating agreement does not incorporate the provisions of . . . § 34-187(b), and [§] 34-187(a) [provides] that the statute applies `[e]xcept as otherwise provided in an operating agreement.'"
[16] If the defendant's argument were taken to its logical end, then only those statutory provisions explicitly mentioned or referenced in the operating agreement would control. Yet, the Limited Liability Company Act does not even require that a limited liability company have an operating agreement.
[17] As the Supreme Court of Wyoming recently stated: "It is not fatal to an operating agreement that it does not cover all pertinent concerns. If certain subjects are not addressed in the operating agreement, the limited liability company is guided in regard thereto by the default provisions of the statutes. Perhaps because of the statutory default concept, limited liability statutes typically do not mandate a particular structure or particular provisions for operating agreements:

"The statutes allow the owners of the business to use the operating agreement to set up the management of the entity pretty much as they please, and in a manner far less restrictive than the special close corporation statutes, which generally share the same goal of circumventing the mandatory provisions of the general corporation statute to facilitate managerial flexibility." (Citation omitted; internal quotation marks omitted.) In re Kite Ranch, LLC, 234 P.3d 351, 360 (Wyo.2010).
We perceive statements by this court to be particularly significant with respect to foundational principles of limited liability company law because Wyoming was the first state to enact laws governing such companies. See, e.g., S. Hamill, "The Origins Behind the Limited Liability Company," 59 Ohio St. L.J. 1459, 1460 (1998).