JAMES LAPLANTE *v.* IVAN
VASQUEZ, JR., ET AL.
(AC 33373)

Gruendel, Beach and Peters, Js.

---

Argued April 10—officially released July 17, 2012

*Timothy Brignole,* with whom, on the brief, were *Richard W. Mather* and *Juri E. Taalman,* for the appellant (plaintiff).

*Theodore W. Heiser,* with whom was *Catherine Cordick Heiser,* for the appellees (defendant Joseph A. Malick, Jr., et al.)

*Opinion*

PETERS, J. To encourage the settlement of civil cases, General Statutes § 52-192a[1] imposes sanctions on litigants who reject reasonable settlement offers by authorizing a trial court to order the payment of interest on a judgment if the amount recovered by the plaintiff exceeds or is equal to an offer of compromise tendered by the plaintiff and rejected by the defendant. See, e.g., *Branford* v. *Santa Barbara,* 294 Conn. 803, 816, 988 A.2d 221 (2010). The dispositive issue in this appeal is whether, pursuant to § 52-192a, the trial court properly awarded interest on the $250,000 judgment rendered against the defendants in an action brought under General Statutes § 30-102,[2] commonly known as the Dram Shop Act. We affirm the judgment of the court.

---

[1] General Statutes § 52-192a provides in relevant part: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may, not earlier than one hundred eighty days after service of process is made upon the defendant in such action but not later than thirty days before trial, file with the clerk of the court a written offer of compromise signed by the plaintiff or the plaintiff's attorney, directed to the defendant or the defendant's attorney, offering to settle the claim underlying the action for a sum certain. . . . (c) After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . . The interest shall be computed from the date the complaint in the civil action . . . was filed with the court . . . ."

[2] General Statutes § 30-102 provides in relevant part: "If any person, by such person or such person's agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay

In a complaint filed on May 26, 2009, the plaintiff, James LaPlante, alleged, pursuant to the Dram Shop Act, that the defendants, Joseph A. Malick, Jr., and Piggy's Café, Inc.,[3] were liable for damages that the plaintiff sustained as the result of a motor vehicle accident caused by Ivan Vasquez, Jr., a patron of Piggy's Café. The defendants denied liability. After a jury verdict in favor of the plaintiff in the amount of $4.2 million, the court awarded the plaintiff damages in the amount of $250,000, the maximum amount recoverable under the Dram Shop Act. In addition, the court awarded the plaintiff offer of compromise interest pursuant to § 52-192a in the amount of $35,000 and costs. The plaintiff has appealed, and the defendants have cross appealed.

The jury reasonably could have found the following facts. The plaintiff was a Connecticut state trooper. On July 19, 2008, at approximately 2:15 a.m., the plaintiff parked and exited his police cruiser in the vicinity of exit 48, westbound, on Interstate 84, to attend to an Acura automobile that was pulled over on the right side of the highway. The plaintiff stood between the passenger side of the Acura and a concrete bridge abutment to speak to the Acura's occupants.

At the same time, Ivan Vasquez, Jr., was driving his Ford pickup truck westbound on the highway. He was intoxicated, having just celebrated his birthday at Piggy's Café, a bar in Hartford owned and operated by the defendants. While at Piggy's Café, Vasquez had been served alcohol.

just damages to the person injured, up to the amount of two hundred fifty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of two hundred fifty thousand dollars, to be recovered in an action under this section . . . ."

[3] The plaintiff's four count complaint alleged claims against Joseph A. Malick, Jr., as permittee of Piggy's Café, and Piggy's Café, Inc., pursuant to § 30-102, and alleged claims against the named defendant, Ivan Vasquez, Jr., for negligence and recklessness. On June 30, 2009, Vasquez was defaulted for failure to appear, and the court granted the plaintiff's motion for judgment as to Vasquez on March 21, 2011. Vasquez is not a party to either of the

As the plaintiff stood next to the passenger side of the Acura, the truck operated by Vasquez struck the plaintiff's police cruiser, which was parked behind the Acura. The truck veered or was propelled left across the travel lanes of the highway. The truck hit the jersey barriers on the left side of the highway and careened back across the travel lanes to the right side of the highway, smashing into the driver side of the Acura. The force of the collision pinned the plaintiff between the passenger side of the Acura and the concrete bridge abutment, crushing and fracturing the plaintiff's legs and injuring his back, abdomen and other parts of his body.

Prior to trial, pursuant to § 52-192a, the plaintiff submitted an offer of compromise to the defendants in the amount of $250,000. The defendants rejected the plaintiff's offer.[4] The jury returned a verdict in favor of the plaintiff, finding by a preponderance of the evidence that: (1) Vasquez was provided alcohol by the defendants on July 18 and/or July 19, 2008; (2) Vasquez was intoxicated at the time he was provided alcohol by the defendants; and (3) Vasquez' intoxication was a substantial factor in causing the plaintiff's injuries. The jury awarded the plaintiff damages in the amount of $4.2 million. The court accepted the jury's verdict and rendered judgment thereon, but reduced the damages award from $4.2 million to $250,000, the maximum amount recoverable under the Dram Shop Act. In addition, the court awarded the plaintiff offer of compromise interest in the amount of $35,000 and costs.[5] The

present appeals. Accordingly, we refer to Piggy's Café, Inc., and Joseph A. Malick, Jr., as the defendants.

[4] The plaintiff's offer of compromise was deemed rejected when the defendants did not accept it within thirty days. General Statutes § 52-192a (a) ("[i]f the offer of compromise is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the offer of compromise shall be considered rejected and not subject to acceptance unless refiled").

[5] The court awarded the plaintiff a total of $290,554.08 in damages, which included $5554.08 in fees and $35,000 in interest pursuant to § 52-192a. The

court based its award of offer of compromise interest on the $250,000 in damages that the plaintiff was permitted to recover under the Dram Shop Act.

The dispositive issue in the plaintiff's appeal and in the defendants' cross appeal is the propriety of the court's calculation of the interest to which the plaintiff was entitled under § 52-192a. The plaintiff claims that the award of offer of compromise interest should have been based on the jury's verdict of $4.2 million.[6] The defendants claim that the court improperly awarded any offer of compromise interest to the plaintiff because this award permitted him to recover damages in excess of the maximum amount authorized by the Dram Shop Act. We are not persuaded by either of these claims, and affirm the judgment of the court.

We begin by setting forth the applicable standards of review. The question of whether the trial court properly awarded interest pursuant to § 52-192a is one of law subject to plenary review. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 55, 717 A.2d 77 (1998). Insofar as the

$35,000 award of offer of compromise interest represents eight percent annual interest on the amount recovered by the plaintiff, $250,000, from the date the plaintiff's complaint was filed to the date judgment was rendered by the court, a total of twenty-one months. The parties dispute only the $35,000 award.

[6] The plaintiff also claims that the trial court improperly failed to instruct the jury in accordance with his request to charge on the issue of substantial intoxication. There is no error in the court's failure to administer the charge on "substantial intoxication" as such a charge has no basis in our statutory or common law. *State* v. *Gant*, 231 Conn. 43, 47, 646 A.2d 835 (1994) (" '[a] request to charge . . . [that] is an accurate statement of the law must be given' "), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995). We note further that any error in refusing to administer the charge would be rendered harmless by virtue of the jury's finding that the plaintiff had proved intoxication; see *Matthiessen* v. *Vanech*, 266 Conn. 822, 829, 836 A.2d 394 (2003); and, if the case were remanded to the trial court, that no additional relief could be afforded to the plaintiff because he already has recovered the maximum amount of damages permitted under the Dram Shop Act. See General Statutes § 30-102.

parties' claims require us to interpret the text of § 52-192a and of the Dram Shop Act, statutory construction presents a question of law over which we exercise plenary review. *418 Meadow Street Associates, LLC* v. *Clean Air Partners, LLC*, 304 Conn. 820, 829, 1 A.3d 1194 (2012). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[7] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 779, 961 A.2d 349 (2008).

I

THE PLAINTIFF'S APPEAL

The plaintiff claims that the amount of offer of compromise interest the court awarded him was improper.

___

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering

Specifically, he claims that the court should have calculated the award by reference to the jury's verdict of $4.2 million, rather than by reference to the court's judgment of $250,000. The defendants argue to the contrary. We conclude, in light of the plain language of § 52-192a (c), that the court awarded the plaintiff the legally correct amount of interest.

"[I]nterest [under § 52-192a] is to be awarded by the trial court when a valid offer of [compromise] is filed by the plaintiff, the offer is rejected by the defendant, and the plaintiff ultimately recovers an amount greater than the offer of [compromise] after trial. . . . [A]n award of interest under § 52-192a is mandatory, and the application of § 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts. . . . The statute is admittedly punitive in nature. . . . It is the punitive aspect of the statute that effectuates the underlying purpose of the statute and provides the impetus to settle cases. . . . [T]he strong public policy favoring the pretrial resolution of disputes . . . is substantially furthered by encouraging defendants to accept reasonable offers of [compromise]. . . . Section 52-192a encourages fair and reasonable compromise between litigants by penalizing a party that fails to accept a reasonable offer of settlement. . . . In other words, interest awarded under § 52-192a is solely related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent waste of judicial resources." (Citation omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 152–53, 998 A.2d 730 (2010).

The plain language of § 52-192a supports the court's calculation of its award of offer of compromise interest

such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

by reference to the judgment amount of $250,000. Section 52-192a (c) provides in relevant part: "If the court ascertains from the record that the plaintiff *has recovered* an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . ." (Emphasis added.) In this case, the amount "recovered" by the plaintiff was not the amount of the jury verdict, $4.2 million, but $250,000, the amount to which that verdict was reduced by virtue of the Dram Shop Act's limit on damages.

The plaintiff claims that " 'amount so recovered' " is ambiguous and that restricting offer of compromise interest to the amount actually recovered by the plaintiff undermines the public policy behind § 52-192a. We reject this claim. The language at issue was incorporated into the statute by amendment. Number 83-295, § 9, of the 1983 Public Acts amended what is now § 52-192a (c)[8] by inserting "amount so recovered" in place of the word "verdict" and inserting "said amount" in place of the words "the amount of the verdict." Thus: "If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the *amount so recovered* eight per cent annual interest on *said amount* . . . ." (Emphasis added.) General Statutes § 52-192a (c). The language of the statute indicates plainly the intent of the legislature that offer of compromise interest is to be awarded only on the amount actually *recovered* by a plaintiff.

---

[8] At the time Public Act 83-295, § 9, was passed, it amended what was then subsection (b) of § 52-192a. Number 05-275, § 4, of the 2005 Public Acts redesignated what was then subsection (b) of § 52-192a as the current subsection (c).

"We are not free . . . to create ambiguity when none exists . . . we cannot accomplish a result that is contrary to the intent of the legislature as expressed in [a statute's] plain language. . . . [A] court must construe a statute as written. . . . Courts may not by construction . . . add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as [our Supreme Court] has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Citation omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008). "Thus, no matter how sympathetic or deserving the plaintiff may appear to be, it is the province of the legislature, not this court"; id.; to determine whether § 52-192a (c) should permit offer of compromise interest to be imposed on a jury verdict where the amount of the verdict is greater than the amount recoverable by the plaintiff.

II

THE DEFENDANTS' APPEAL

In their cross appeal, the defendants claim that the court improperly awarded any offer of compromise interest to the plaintiff because it had awarded him damages in the maximum amount permitted by the Dram Shop Act. Specifically, the defendants claim that the statutory limit of $250,000 precludes an award of offer of compromise interest once the court has rendered a judgment at the statutory ceiling on the plaintiff's underlying cause of action.[9] We are not persuaded

[9] The defendants do not dispute that § 52-192a authorizes the award of offer of compromise interest in the present case. See General Statutes § 52-192a (c); *Berchem, Moses & Devlin, P.C.* v. *East Haven*, 133 Conn. App. 763, 770–71, 37 A.3d 796 (2012) ("[s]ection 52-192a authorizes an award of interest whenever: [1] a plaintiff files a valid offer of [compromise] within eighteen months of the filing of the complaint in a civil complaint for money

that the Dram Shop Act compels us to reach such a conclusion under the circumstances of this case.

The issue, as we see it, is whether the court's imposition of offer of compromise interest on the $250,000 judgment in the present case furthered the public policy goals expressed in § 52-192a without contravening the policy set forth in the Dram Shop Act. "The legislature enacted § 30-102, the Dram Shop Act, in 1933, thereby creating a cause of action against liquor sellers for victims injured by intoxicated persons to whom the liquor sellers have served alcohol. . . . In enacting § 30-102 and abrogating the common law bar to a cause of action [in negligence], the legislature thus allowed some measure of recovery to victims of acts of intoxicated persons." (Citations omitted.) *Kelly* v. *Figueiredo*, 223 Conn. 31, 38, 610 A.2d 1296 (1992). "The underlying premise of the [Dram Shop Act] is that it is in the public interest to compensate citizens of this state for injuries received when a vendor sells alcohol to an intoxicated person who in turn brings about injuries as a result of such intoxication." *Kowal* v. *Hofher*, 181 Conn. 355, 358, 436 A.2d 1 (1980).

The strict liability imposed by the Dram Shop Act is tempered by the $250,000 limitation that the statute imposes on the amount of damages recoverable. See General Statutes § 30-102; *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 399–400, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989).[10] Section 30-102 provides in relevant part: "If any person, by such

damages; [2] the defendant rejects the offer of [compromise]; and [3] the plaintiff ultimately recovers an amount greater than or equal to the offer of [compromise]" [internal quotation marks omitted]). Rather, the defendants argue that it was improper for the court to award offer of compromise interest once it had rendered judgment for the plaintiff in the amount of $250,000, the maximum amount permitted by the Dram Shop Act, because the award of interest caused the total amount awarded to the plaintiff to exceed the statutory limit.

[10] "The [D]ram [S]hop [A]ct imposes a 'tort liability' not a penal liability. *Sanders* v. *Officers Club of Connecticut, Inc.*, [196 Conn. 341, 348, 493 A.2d

person or such person's agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of two hundred fifty thousand dollars . . . ."

The defendants maintain that the $250,000 limitation is rendered meaningless if it does not serve as an absolute limitation on all aspects of a plaintiff's recovery under the act. The plaintiff argues that, as illustrated by the court's reduction of the $4.2 million jury verdict in the present case, the $250,000 limit is fully effective as a ceiling on the compensatory damages a plaintiff may recover in a Dram Shop action. He maintains that the policy of encouraging settlement embodied in § 52-192a serves a different agenda that the Dram Shop Act did not purport to address. We agree with the plaintiff.

In our view, each of the parties has presented a facially reasonable interpretation of the text of the Dram Shop Act under the circumstances of this case. In effect, they have demonstrated that the text of the Dram Shop Act does not provide an unambiguous answer to the interaction between the act's ceiling on recoverable damages and an award of offer of compromise interest. Accordingly, it is appropriate to consult

184 (1985)]. Although it is designed to aid in the enforcement of state liquor laws as well as to protect the public, the main objective of the statute is to afford compensation for injuries to an individual. 'While it may be said that in one sense the statute is penal, nevertheless it is primarily remedial because it gives a remedy enforceable by an individual in a civil action and allows the recovery of damages in an amount commensurate with the injuries suffered.' *Pierce* v. *Albanese*, 144 Conn. 241, 249–50, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). This interpretation follows from the explicit limitation of General Statutes § 30-102 that damages properly recoverable constitute 'just damages' not in excess of [$250,000]. 'Just damages' means simply compensatory rather than exemplary or punitive damages." *Gionfriddo* v. *Gartenhaus Cafe*, supra, 15 Conn. App. 399–400.

legislative history to inform our interpretation of the statute. See *418 Meadow Street Associates, LLC* v. *Clean Air Partners, LLC*, supra, 304 Conn. 829; *Weems* v. *Citigroup, Inc.*, supra, 289 Conn. 779. Our review of that history discloses that the legislature's central purpose in limiting the amount of recoverable damages was to ensure that dram shop sellers would have access to insurance coverage for the strict liability imposed on them by the act. See General Law Committee, Pt. 2, 2003 Sess., pp. 593–601; 9 H.R. Proc., Pt. 7, 1961 Sess., p. 3395; 9 S. Proc., Pt. 6, 1961 Sess., pp. 2097–98; Committee on Liquor Control, 1961 Sess., pp. 72–74, 79–89, 92–96; 8 S. Proc., Pt. 5, 1959 Sess., pp. 1906–10; Committee on Liquor Control, 1959 Sess., pp. 42–43. Establishing a definitive limit on the amount of compensable damages recoverable under the Dram Shop Act establishes predictable and stable levels of potential liability, so that insurers can provide and sellers can obtain insurance coverage at affordable rates. General Law Committee, supra, pp. 594–95, 597–99.

We conclude, under the circumstances of this case, that the award of offer of compromise interest on a $250,000 judgment did not undermine the legislative purpose of the Dram Shop Act's ceiling on recoverable damages. The potential liability of the defendants for compensatory damages did not exceed the statutory limit of $250,000. If the defendants had accepted the plaintiff's offer of compromise, their total liability would have been not one cent more than the ceiling amount for which they presumably maintained, or could have obtained, insurance coverage. Offer of compromise interest was awarded, in accordance with the provisions of § 52-192a (c), only to penalize the defendants for rejecting the plaintiff's reasonable settlement offer. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 152–53.

The facts of the present case present a strong case for implementation of the sanction authorized by § 52-192a (c). Although the defendants were, of course, entitled to contest their responsibility for Vasquez' inebriation, they were required by § 52-192a (c) to weigh that defense against the reasonableness of the plaintiff's $250,000 settlement offer. As it was, the case went to trial, thereby expending the time and resources of the judiciary, and resulted in a jury award of $4.2 million for the plaintiff. If the defendants are to prevail in their argument, then, in cases such as this, in which a plaintiff has sustained very serious injuries and damages that exceed $250,000, the defendants and others similarly situated have little incentive to accept an offer of compromise for the statutory limit, no matter how reasonable, because the amount offered represents the greatest potential liability that can be imposed upon them. The ability of the court to impose offer of compromise interest in such cases provides an incentive to accept a reasonable settlement offer and thereby conserves judicial resources. Accordingly, we are persuaded that the court's award of such interest to the plaintiff was entirely proper.

The judgment is affirmed.

In this opinion the other judges concurred.