******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE DANIEL N.*
(AC 38486)

Alvord, Sheldon and Keller, Js.

*Argued February 4—officially released February 11, 2016\*\**

(Appeal from Superior Court, judicial district of New
Haven, Juvenile Matters, Cronan, J.)

*Michael D. Day*, for the appellant (respondent father).

*Renée Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Michael J. Besso* and *Benjamin Zivyon*, assistant attorneys general, for the appellee (petitioner).

*Thomas F. Mitola*, for the minor child.

*Opinion*

ALVORD, J. The respondent father, Jose N., appeals from the judgment rendered in favor of the petitioner, the Commissioner of Children and Families, in which the trial court terminated the respondent's parental rights with respect to his minor son, Daniel.[1] On appeal, the respondent claims that the court improperly terminated his parental rights because (1) the termination was not in Daniel's best interest, and (2) the respondent was not canvassed prior to the start of the termination trial as required by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015). Although we agree with the court that the termination of the respondent's parental rights was in Daniel's best interest, we reverse the judgment of the court on the sole ground that the court did not canvass the respondent in accordance with the new rule recently mandated by our Supreme Court in *In re Yasiel R.*[2]

The following is a brief summary of the facts and procedural history of this matter. Daniel was born in 2006. He has two half siblings, born in 2012, who have a different father. Shortly after Daniel's birth, the Department of Children and Families (department) became involved with the family, and the department continued to be involved throughout a period of time extending to and after the birth of Daniel's half siblings, because of substance abuse, domestic violence, and mental health issues. On September 27, 2012, the court granted the petitioner's motion for an order of temporary custody for all three children, which led to an adjudication of neglect and Daniel's commitment to the care and custody of the petitioner. Daniel was returned to his mother's care on January 24, 2013, under an order of protective supervision. On September 17, 2013, the petitioner invoked a ninety-six hour hold on Daniel after being informed by a representative of the Family Based Recovery program that Daniel's mother was in a drug induced condition. The ninety-six hour hold was followed by a court order of temporary custody. The respondent was incarcerated at this time, and thus was not a potential resource for Daniel's care. The petitioner moved that the order of protective custody be modified to an order of commitment, which the court granted on October 8, 2013. Daniel has remained in the care and custody of the petitioner since that date.

On December 26, 2013, the petitioner filed a petition to terminate the parental rights of Daniel's mother and the respondent, as well as the parental rights of the father of the half siblings. The termination of parental rights trial was held on February 3, 4 and 5, and June 24 and 25, 2015. The respondent was represented by counsel throughout the entire trial, and the respondent testified at trial. Several witnesses testified at trial, and multiple exhibits were admitted into evidence in this fully contested case.

The court issued its memorandum of decision on September 4, 2015, in which it made the following determinations: (1) the respondent was incarcerated when the termination proceedings were commenced; (2) Daniel's mother had domestic violence issues in her relationship with the respondent; (3) even though the department made reasonable efforts to reunify the respondent with Daniel, the respondent was unable or unwilling to benefit from the reunification efforts; (4) the petitioner established by clear and convincing evidence that Daniel had been found to be neglected or uncared for in a prior proceeding, and that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering Daniel's age and needs, he could assume a responsible position in Daniel's life; (5) the respondent has a reported history of using and selling drugs; (6) the respondent testified at the termination of parental rights trial that he could not be a resource for Daniel; (7) the respondent did not want Daniel to visit him while he was incarcerated;[3] (8) since being released from prison, the respondent had been hindered in any efforts to reunify with Daniel by "his battle with stage four cancer and a lack of stability in his life"; (9) Daniel has had multiple placements in his life; (10) Daniel was hospitalized twice in 2013 for psychiatric problems; (11) Daniel and his half siblings have been placed in the same therapeutic foster home; (12) referencing the testimony of Ines Schroeder, an expert in clinical and forensic psychology, who had been ordered by the court to conduct a psychological evaluation of Daniel, Daniel would suffer significantly if moved again because he has been at his current home for a long period of time and has developed a relationship with his foster parents to the point of calling them "mom" and "dad"; and (13) there is "no justification for allowing more time for the parents to work on reunification." The court, throughout its opinion, referenced the applicable statutes and stated that the petitioner had carried her burden in the termination proceedings by clear and convincing evidence. Accordingly, the court made the adjudicatory determination that the petitioner had established grounds for the termination of the respondent's parental rights and, then, concluded that the petitioner also had provided the requisite evidence that such termination was in Daniel's best interest. This appeal followed.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the

trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"Our Supreme Court has determined that [i]n order to terminate a parent's parental rights under [General Statutes] § 17a-112, the petitioner is required to prove, by clear and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3). . . .

"[A] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [parent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)] . . . ." (Citations omitted; internal quotation marks omitted.) *In re Joseph M.*, 158 Conn. App. 849, 858–59, 120 A.3d 1271 (2015).

With these principles in mind, we turn to the respondent's claims.

## I

The respondent's first claim is that the termination of his parental rights was not in Daniel's best interest.[4] The respondent does *not* challenge on appeal the trial court's determination that the petitioner established a statutory ground for termination. At oral argument before this court, the respondent's counsel affirmed that the trial court's findings with respect to the adjudicatory phase of the termination proceeding were not at issue. The respondent also admits that he testified at the termination of parental rights trial that he was not able to be a resource for Daniel and was requesting a transfer of guardianship to the paternal grandparents of Daniel's half siblings.[5] The respondent's counsel, during oral argument before this court, reaffirmed that the respondent was not a resource for Daniel. Moreover,

it is significant that the respondent has not claimed that any of the court's factual findings were clearly erroneous.

Instead, the respondent focuses on the dispositional phase of the proceeding and the trial court's conclusion that termination of his parental rights was in Daniel's best interest. The respondent "specifically challenges the trial court's findings with respect to . . . § 17a-112 (k) (7)." Section 17a-112 (k) (7) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and make written findings regarding . . . the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

The trial court, in considering this factor, stated in its memorandum of decision that "[n]o person or unreasonable act of any person or economic circumstances of the parents have prevented the parents from maintaining a meaningful relationship with the children. The parents have not been discouraged from visitation by any party." The respondent does not claim that the court's express findings with respect to § 17a-112 (k) (7) were erroneous, but, rather, he argues that the court additionally should have considered the respondent's treatment for cancer when considering that particular factor. The respondent claims: "The [respondent] submits that his cancer treatment has caused a significant impediment to maintaining a meaningful relationship with Daniel. The [respondent] concedes that his cancer treatment was not brought about by 'the other parent,' nor by 'any other person,' nor by an 'economic circumstance.' However, the [respondent's] affliction with cancer and subsequent treatment should be treated similarly, as the same was a circumstance completely beyond the control of the [respondent] that significantly hindered and interfered with [his] ability to maintain a meaningful relationship with Daniel."

We begin by setting forth the relevant law. "In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the [child] only if the court's findings are clearly erroneous. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of

the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Footnote omitted; internal quotation marks omitted.) *In re Joseph M.*, supra, 158 Conn. App. 868–69; see also *In re Nevaeh W.*, 317 Conn. 723, 739, 120 A.3d 1177 (2015).

The respondent's claim regarding § 17a-112 (k) (7) is a matter of statutory interpretation. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847, 937 A.2d 39 (2008).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 605, 887 A.2d 872 (2006).

Section 17a-112 (k) (7) expressly provides the circumstances for a trial court to consider in determining whether there has been interference with a respondent's efforts to maintain a relationship with his or her minor child. Those circumstances include whether the unreasonable acts or conduct of the other parent or any other person has prevented the respondent from maintaining a meaningful relationship with the child or whether the economic circumstances of the respondent have prevented a meaningful relationship. Although the respondent claims that this statutory provision additionally requires a court to consider the effect of an illness and its treatment when it evaluates the evidence, the statute clearly contains no such requirement.

"We are not free . . . to create ambiguity when none

exists . . . we cannot accomplish a result that is contrary to the intent of the legislature as expressed in [a statute's] plain language. . . . [A] court must construe a statute as written. . . . The intent of the legislature, as [our Supreme Court] has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." (Internal quotation marks omitted.) *LaPlante* v. *Vasquez*, 136 Conn. App. 805, 814, 47 A.3d 897 (2012). "[T]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 682, 911 A.2d 300 (2006); see also *Walter* v. *State*, 63 Conn. App. 1, 8, 774 A.2d 1052 ("We are also mindful that [t]he court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. . . . In such a situation, the remedy lies not with the court but with the General Assembly." [Internal quotation marks omitted.]), cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001).

We conclude that § 17a-112 (k) (7) does not require the analysis claimed by the respondent, and we decline his invitation to read an additional criterion into the statute. Accordingly, the respondent's best interest claim fails.

## II

We next address the respondent's claim that he is entitled to a new termination of parental rights trial because the trial court failed to canvass him prior to the start of his trial, as is now required by *In re Yasiel R.*, supra, 317 Conn. 773. The respondent argues that the holding in *In re Yasiel R.* must be applied retroactively, thereby requiring this court to reverse the judgment of the trial court. We agree.

In *In re Yasiel R.*, our Supreme Court used its "supervisory authority over the administration of justice to require that a trial court canvass a parent who does not consent to the termination prior to the start of a termination of parental rights trial, in order to ensure the overall fairness of the termination of parental rights process." Id., 776. Even though the court determined that, under the circumstances of that case, such a canvass was not required by the due process clause of the fourteenth amendment, it nevertheless concluded that "in the interest of the fair administration of justice, it is appropriate that we exercise our supervisory authority to require that a trial court canvass the respondent parent before the start of any trial on the termination of parental rights."[6] Id., 787–88, 789. "[P]ublic confidence in the integrity of the judicial system would be enhanced by a rule *requiring* a brief canvass of *all* parents immediately before a parental rights termination trial so as to ensure that the parents understand the trial process, their rights during the trial and the

potential consequences." (Emphasis added.) Id., 794. The rule applies regardless of whether the parent is represented by counsel or whether the evidence presented is contested. Id.

The Supreme Court acknowledged that it was adopting a new rule of practice. Id., 796. For that reason, the petitioner argues that its application should be prospective rather than retroactive. Although this is a persuasive argument, we remind the petitioner that our Supreme Court applied its new rule to the respondent in *In re Yasiel R.* even though it found no error by the trial court and no violation of the respondent's constitutional rights.

"As a general rule, judicial decisions apply retroactively. . . . Indeed, a legal system based on precedent has a built-in presumption of retroactivity." (Citation omitted; internal quotation marks omitted.) *State* v. *Marsala*, 42 Conn. App. 1, 4, 679 A.2d 367, cert. denied, 239 Conn. 912, 682 A.2d 1010 (1996). "The issue of retroactivity of decisional law is a question of policy to be decided by a state's Supreme Court, and may be decided by the policy consideration of whether litigants could be deemed to have relied on past precedent or whether the 'new' resolution of an 'old' issue was foreshadowed, or whether equity, given the particular facts, requires a prospective application only." *Perkins* v. *Fasig*, 57 Conn. App. 71, 75, 747 A.2d 54, cert. denied, 253 Conn. 925, 754 A.2d 797 (2000).

"In *Neyland* v. *Board of Education*, 195 Conn. 174, 179, 487 A.2d 181 (1985), [our Supreme Court] applied the three-part test set out in *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), for determining whether a decision must be applied prospectively only. A common-law decision will be applied nonretroactively only if: (1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Citation omitted; internal quotation marks omitted.) *Ostrowski* v. *Avery*, 243 Conn. 355, 378 n.18, 703 A.2d 117 (1997).

In applying these legal principles, we conclude that our Supreme Court has given no guidance to belie the retroactive application of its new rule regarding the canvassing of a parent prior to the start of a termination of parental rights trial. It applied the rule to the respondent in *In re Yasiel R.*: "Because the parental rights involved in such a canvass are so important in ensuring the fairness of the process, we do not believe it would be prudent to require that the public wait for the adoption of a new rule of practice. We conclude, therefore,

that imposing the canvass rule announced today is an appropriate exercise of our supervisory authority." *In re Yasiel R.*, supra, 317 Conn. 796. Although Justice Zarella, in his dissent, expressed concerns that "[p]rocedural rules announced under the court's supervisory authority should be given only prospective effect and not be used to reverse judgments in individual cases"; id., 797; the majority did not respond to that concern and clearly did not state that its new rule would be applied prospectively. Moreover, when the petitioner filed a motion for reconsideration after the release of *In re Yasiel R.*, requesting that the court clarify "that the new rule does not apply to any cases where the trial has already taken place," the court denied the petitioner's motion.[7] We, therefore, conclude that our Supreme Court meant to apply its new rule retroactively, thereby compelling us to reverse the judgment of the trial court.

We are mindful that we are reversing the trial court's judgment even though the respondent in this case was represented by counsel, participated in a lengthy trial with several witnesses and multiple exhibits, and has acknowledged that he is unable to be a resource for Daniel. Moreover, we are mindful that Daniel, who is now ten years old and has endured multiple placements since the age of six, now has been in a therapeutic foster home for a lengthy period of time and has formed a strong attachment to his foster parents. Further, there was no error in the trial court's findings or conclusions of law, and, the new rule was not in place at the time the termination of parental rights trial commenced in this case.

We also acknowledge that "[our Supreme Court] has repeatedly recognized that, in the dispositional stage, it is appropriate to consider the importance of permanency in children's lives. . . . Virtually all experts, from many different professional disciplines, agree that children need and benefit from continuous, stable home environments. . . . [N]o child can grow emotionally while in limbo, never really belonging to anyone except on a temporary and ill-defined or partial basis. . . . Repeatedly disrupted placements and relationships can interfere with the children's ability to form normal relationships when they become adults." (Citations omitted; internal quotation marks omitted.) *In re Nevaeh W.*, supra, 317 Conn. 731–32.

Nevertheless, "[i]t is axiomatic that the Appellate Court is bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *William C.*, 135 Conn. App. 466, 469 n.1, 41 A.3d 1205 (2012). Accordingly, on the basis of the holding set forth in *In re Yasiel*

*R.*, we are compelled to reverse the judgment of the trial court.

The judgment is reversed and the case is remanded for a new trial according to law.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 11, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of Daniel's mother were also terminated, and she has filed a separate appeal. Because she is not a party to this appeal, we refer in this opinion to the respondent father as the respondent.

[2] We note that the termination of parental rights trial commenced on February 3, 2015, and concluded on June 25, 2015, which was prior to issuance of the Supreme Court's decision in *In re Yasiel R.* on August 18, 2015.

[3] In the psychological consultation report prepared by Ines Schroeder, an expert in clinical and forensic psychology, which was admitted as a full exhibit at trial, information is provided that the respondent was incarcerated on April 3, 2012, and was released from prison to a halfway house on March 7, 2014.

[4] Although we conclude that the judgment of the trial court must be reversed for the court's failure to canvass the respondent at the beginning of the termination of parental rights trial, we nevertheless address the respondent's best interest claim because it is an issue likely to arise during a new trial. See *State* v. *A. M.*, 156 Conn. App. 138, 156–57, 111 A.3d 974, cert. granted on other grounds, 317 Conn. 910, 116 A.3d 309 (2015).

[5] The respondent took no steps to effectuate a transfer, and the motion to transfer guardianship that the court did consider, which was consolidated for trial with the termination of parental rights petition, only sought the transfer of Daniel's half siblings to their paternal grandparents. Daniel was not mentioned.

[6] Despite ruling that due process did not require such a canvass, our Supreme Court did not conduct a harmless error analysis in *In re Yasiel R.*

[7] We note that the respondent, in her opposition to the motion for reconsideration, argued that "*there is no reason to believe* that there will be a scramble to reverse other termination judgments that were pending when the slip decision in this case was released on August 6, 2015." Contrary to this representation, we are aware of other pending appeals involving this precise issue.